## Bailey and Pott *versus* Commonwealth, for use, &c.

*Recognisance on Partition in Orphans' Court "for Heirs," includes also Widow's Third.*

1. The acceptor of real estate of a decedent at the appraised value, gave a recognisance with surety to pay to the heirs their several shares within one year from date with interest. Before payment, the interest of the cognisor was sold at sheriff's sale, and after the widow's death, the heirs claimed the principal of her dower or thirds from the purchasers, terre-tenant, as secured by the recognisance. *Held*, that the recognisance being for the full appraised value of the land, it covered the share of the widow, the principal of which, the heirs were entitled to recover at her death, though her name was not mentioned in the recognisance, and it was given to the heirs alone.

2. Though there is no regular form for a recognisance, it ought in all cases to follow the decree of the court and exhibit the interests secured by it clearly.

ERROR to the Common Pleas of *Schuylkill county*.

This was a *scire facias sur recognisance* in the Orphans' Court to September Term 1859, in the name of The Commonwealth for the use of the heirs of John Bailey, Sr. and against John Bailey, Jr., and Abraham Pott, with notice to Thomas Wiley, terre-tenant, in which the following case was stated for the opinion of the court:—

John Bailey, Sr., formerly from Port Carbon, died November 10th 1837, seised in fee simple of and in certain real estate in Port Carbon, said county. Proceedings were had in the Orphans' Court of said county to make partition of the real estate of decedent, which proceedings are recorded in Orphans' Court docket No. 5, page 290, and are hereby made a part of this case stated, including the recognisance of John Bailey, Jr., and Abraham Pott, defendants above named. A judgment was subsequently recovered against John Bailey, Jr., and the real estate accepted by him under the said Orphans' Court proceedings, at the sum of $850, was sold by the sheriff of said county to William Wiley, for the sum of $1200, whose rights are now vested in the said Thomas Wiley, the above-named terre-tenant. Sarah Bailey was the widow of John Bailey, Sr., and survived until December 9th 1858, when she likewise died. Payments of interest were made to her at divers times, by both William Wiley and Thomas Wiley aforesaid; said defendants alleging that said interest was paid in full by Thomas Wiley to September 1858. All the heirs of John Bailey, Sr., deceased, are represented by counsel in this case.

If the court be of the opinion that the heirs of John Bailey, Sr., deceased, are entitled to claim of and from the said terre-tenant the principal sum of widow's one-third of the said sum of $850, with interest from the date of her death, then judgment

[Bailey *v.* Commonwealth.]

to be entered in favour of the plaintiffs for the sum of $260.80, no part of this sum having ever been paid; but, if not, then judgment to be entered for the defendants. The costs, including those of the present adjourned court, to follow the judgment, and either party to have the right to sue out a writ of error thereto. The sum of money named above is $266.80.

The proceedings in partition presented the following facts:— The widow of deceased, his son John, and five daughters survived him. The portion of real estate accepted by John at the appraised value, to wit, $850, was adjudged to him 21st October 1839, &c. The Orphans' Court recognisance was entered into by him and Pott, with Abraham as surety, with this condition, to wit: "Now if the said John Bailey, or Abraham Pott, or their heirs, executors, or administrators, shall pay to *the heirs* of the said deceased their several shares or purparts of the sum of $850, within one year from this date, *with lawful interest*, then the above recognisance to be void, or else to be and remain in full force and virtue." After entering into the recognisance, John Bailey, Jr., continued in the possession of the real estate, and until a judgment was recovered against him in the court of the said county by James B. Levan, endorsee of Abraham Pott, on 10th June 1846, under which the real estate was sold as the property of John Bailey, Jr., by the sheriff during the same year, and purchased by William Wiley for $1200. The same land afterwards became vested in the terre-tenant, one of the defendants in this suit, who derived his title from William Wiley.

After a full hearing, the court ordered judgment to be entered in favour of the plaintiffs, to which defendants excepted; December 5th 1861, damages assessed at $313.89. This writ was then sued out by the defendants, who averred here that the court below erred in rendering judgment in favour of the plaintiffs.

*Geo. H. Clay*, for the terre-tenant, argued that the heirs are estopped by the recognisance. It was given to the Commonwealth for their use. They accepted it, and thereby adopted as true all the affirmations and facts therein recited. It represents to them that they are entitled to the whole sum, to wit, $850, in one year from the date, with lawful interest, and they represent to third persons that this is true. The purchaser, William Wiley, acting also upon the truth of the affirmations and facts therein recited, paid $1200, knowing that out of this sum the proceeds of that sheriff's sale which discharged the lien of the whole recognisance as to him, the recognisees would be paid the amount of their recognisance. The heirs have built upon a false foundation, and cannot maintain it at the expense of the innocent purchaser, nor his vendee, the terre-tenant, Thomas Wiley. When one does an act, whether it be by commission

[Bailey v. Commonwealth.]

or omission, whereupon another acts, the former, not the latter, must bear the loss, if any loss is to be borne: 1 Greenl. Ev. 312, 207; Griffith's Administrator's Appeal, 4 Yeates 35; Evans v. Meylert, 7 Harris 402; Smith and wife v. Warden and Alexander; Fenstermacher v. Moyer, 11 Casey 354; 7 Harris 424; Bitting and Waterman's Appeal, 5 Id. 211; McCullough v. Wilson, 9 Id. 436; Craft v. Lathrop, 2 Wallace, Jr., C. C. R.; Waters' Appeal, 11 Casey 523; McMullin v. Glass, 3 Id. 15; Heilner v. Battin, 3 Id. 517; Willis v. Swartz, 4 Id. 413.

The widow could not have sustained a *scire facias* on this recognisance against the purchaser. It was not given for her use, and a plea of *nul tiel record* as to her would have been available. Her remedy would have been by an action against the sheriff's vendee, who would have been bound to pay her, because she had an interest in the land, and had done no act which led him astray. *Assumpsit* would lie: Shelly v. Shelly, 8 W. & S. 153; Piddock v. Bye, 1 Rawle 183; Unangst v. Kramer, 8 W. & S. 391; and the judgment would be a judgment *de terris*. Ejectment would lie to enforce the payment of her dower, and in both actions she could offer in evidence the appraisement to establish the value of her interest. The purchaser knew this, and paid her what is called the interest in the case stated, because that sum alone, as often as it became due, she could enforce by either action. But payment of interest to the widow was no acknowledgment of the lien of the heirs. The right of the heirs is distinct and separate from that of the widow; and, what the terre-tenant did to her, would not be evidence to defeat the estoppel set up by him against the heirs. *Per extraneam personam, nihil nobis acquiri potest*: Kyle v. Wells, 5 Harris 289; Coleman v. Forbes, 10 Id. 157; Christy v. Flemington, 10 Barr 129. He was to pay the widow. She had not misled him by the record.

If the heirs be not estopped, have they not lost their lien on the land as against the purchaser? He had no notice of it. It was hidden from his sight, under an averment, too, that the whole sum would be payable out of the proceeds of the sale, on which fund the heirs would be turned for payment. In Wood v. Reynolds, 7 W. & S. 406, this court held that "it is the duty of the plaintiff to see that his judgment is rightly entered: Bear v. Patterson, 3 W. & S. 233; York Bank's Appeal, 12 Casey 458; Hudson's Appeal, 3 Id. 46. The recognisance was a common law lien: Allen v. Reesor, 16 S. & R. 11. It was as necessary to enter it properly as a judgment, which is a statutory lien. No title would have passed without it: 11 S. & R. 325. If no recognisance had been given at all, and the land had been sold at sheriff's sale, the purchaser would clearly take it discharged of the lien of the heirs unless he should be notified at the sale that that amount of purchase-money was unpaid. Or before the

sheriff paid the balance of the proceeds over to the defendant, Bailey, after satisfying record liens, the heirs could stop it in his hands by giving the sheriff notice of the unpaid purchase-money.

*J. Wright* and *G. H. McCabe,* for defendants in error.—It is true the recognisance does not make any mention of the widow, but the proceedings in the Orphans' Court show that the widow was in full life. She was living at the date of the sheriff's sale of the property of John Bailey, Jr., and, as was proper, no part of the proceeds was applied to the payment of her third of the land. These records were before the court below, the usage prevailing in that county in reference to such recognisances was well known, and upon full consideration the recognisance in this case was deemed sufficient, and the judgment rendered. The terre-tenant and those under whom he claims, paid over and over again the interest from time to time accruing, thus recognising their full liability on our remaining third. The proceedings in the Orphans' Court are in the direct line of the terre-tenant's title; he cannot hold his land an hour without them, and he must take the whole record together—not such portions as may suit him best.

The doctrine of estoppel cannot be applied to heirs under the charge of the Orphans' Court. They are often of very tender age, incapable of binding themselves by a direct act, and are always under the immediate protection of the court. They have a right to suppose that their protector, the court, will correctly supervise the entire proceedings as to mere matters of form.

It is impossible to refine upon the money paid to the widow, and make of it anything but the interest accruing upon a principal sum remaining unpaid. To suppose it anything else is to assert that the *principal* in some way became paid, but that the *interest* survived. This very idea has already been said to be "strange and preposterous:" Mentzer *v.* Menor, 8 Watts 299.

The heirs have not lost their lien. If lost at all, it must have been from want of notice to the terre-tenants, or from the sheriff's sale. "The principles which govern liens of judgments in the Common Pleas do not apply to liens for owelty of partition in the Orphans' Court. The one is on the line of the title, and must be looked for in the proceedings in partition, the other is outside of it:" Riddle & Pennock's Appeal, 1 Wright 177, No. 4. Wiley does not take without notice, for the whole proceedings in the Orphans' Court constitute notice: Purd. Dig. 205, § 123; Kean *et al. v.* Franklin, 5 S. & R. 155. The sale had no effect to divest our claim: Mentzer *v.* Menor, 8 Watts 298; Medlar *et al. v.* Aulenbach, 2 Penn. R. 355; Vandever *v.* Baker, 1 Harris 121, and Zeigler's Appeal, 35 Penn. R. 189, in which the widow's share is treated as an *estate.* Indeed, no recognisance seems to be required: Purd. Dig. 205; Riddle & Pennock's Appeal, 1 Wright 177. The order or

[Bailey v. Commonwealth.]

decree of the court will itself create the lien: Hise v. Geiger, 7 W. & S. 275; Medlar v. Aulenbach, 2 Penn. Rep. 355.

The opinion of the court was delivered, February 3d 1862, by THOMPSON, J.—The main question presented here for adjudication, is upon the effect of the recognisance entered into by Bailey & Pott. Did it stand good as a recognisance for the widow's share as well as that of the heirs, being in their names and payable in one year? The pertinency of this inquiry consists in this, that if it is to be treated as a recognisance for the shares to be paid to the heirs, the sheriff's sale to Wiley divested its lien, because it would be payable out of the proceeds of that sale. If the one-third of it was to cover the widow's share, then it was not discharged by the sale, because she was living at the time and survived for upwards of twelve years thereafter.

That it covered her share is certain, for it was for the full amount of the appraised value of the land. The fact is not disputed, that it was known that there was a widow living at the time of the sale, to whom, as the special verdict finds, the purchaser at that sale and his vendee, paid the annual interest up to within almost three months of her death. The recognisance being thus for the full amount, the law apportioned one-third of it to the widow. It seems to me nothing can be plainer than this. There is no form for a recognisance, as we said in Riddle & Pennock's Appeal, 1 Wright 177. There as here, it was in the name of the heirs and payable in a year, and it was without a penalty, but it was held good as a recognisance for the widow's share. True, between the levy and sale the widow died, and we held, that the lien was discharged, being payable out of the proceeds of the sale. But this does not change the matter so far as this case is concerned. Here there was a recognisance in form; it covered the full valuation of the land; it mattered not that it was in the name of the heirs: one-third of it, by the express mandate of the law (Act of 29th March 1832, § 41), was to remain charged upon the premises until the death of the widow, then to be paid by the cognisor, his heirs or assigns, to the children or parties legally entitled. We think the recognisance taken in the name of the heirs, was not therefore defective in not naming the widow, for the law regulated its effect, fixed its purpose, and postponed payment of the one-third until the death of the widow. The purchaser at the sheriff's sale was bound to know the law, and took the risk of there being a widow; and there being one here, he must be presumed to have made his bid with that knowledge, and that one-third part of the recognisance would remain a charge on the premises until her death.

All that has been said in regard to the name in which the recognisance stood, and that it was not notice of the widow's

[Bailey *v.* Commonwealth.]

claim, thus endeavouring to place it upon the same footing with the principles regulating liens in the Common Pleas, is fully answered in Riddle & Pennock's Appeal, *supra.* The former is in the line of the title, the latter is outside of it. It was therefore the duty of the terre-tenant to take notice of the recognisance, and the law would tell him the rest—would inform him that as it was for the full appraised value of the land, the one-third was the capital producing the widow's interest, and its payment would be postponed until her death. He did know this, for he paid her interest on the basis of this valuation, until within a little over three months of her decease. The active operation of the recognisance to the extent of one-third being thus postponed, so far as the heirs were concerned, was fully revived by her decease, and was in good form to be asserted by them thereafter; and, consequently, we are of opinion that the court decided rightly in the premises. The form of the recognisance here is not approved, though sustained. It ought in all cases to follow the decree of the court, and exhibit the interest secured by it clearly.

Judgment affirmed.